IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

TRUDY HUBBARD                                                                                          PLAINTIFF

v.                                             CASE NO. 12-cv-1118

WAL-MART STORES ARKANSAS, LLC                                                     DEFENDANT

**MEMORANDUM OPINION**

Before the Court is Defendant Wal-Mart Stores Arkansas, LLC's ("Walmart") Motion for Summary Judgment. (ECF No. 14). Plaintiff Trudy Hubbard ("Hubbard") has responded. (ECF Nos. 19 & 23). Walmart has replied. (ECF No. 22). The Court finds the matter ripe for consideration.

BACKGROUND

The case involves employment discrimination claims brought by Hubbard, an African-American female, against Walmart. Hubbard began working at Walmart in Crossett, Arkansas in 2004. Hubbard then transferred to a Walmart store in Monticello, Arkansas. Subsequently, in approximately July 2010, Hubbard transferred to a Walmart store in El Dorado, Arkansas. At the El Dorado store, Hubbard worked as a salaried paid assistant store manager.

The responsibilities of assistant store managers at Walmart include supervising associates and completing evaluations for those associates. When completing evaluations, Walmart requires assistant store managers to key in the evaluation to a computer system by a deadline— thirty days prior to the anniversary of the associates' hire date. To ensure that assistant store managers comply with this deadline, the personnel department sends reminder e-mails and posts lists of upcoming evaluation dates in the managers' offices.

1

Despite these procedures, in this case, Hubbard missed an evaluation deadline. Specifically, Hubbard failed to key Laquita Kemp's ("Kemp") evaluation into the Walmart computer system thirty days prior to the anniversary of Kemp's hiring date. Hubbard had completed Kemp's evaluation by telephone prior to the deadline. However, Hubbard was not working in the store on the days before and after the deadline so she asked a personnel coordinator Stacy Sorrell ("Sorrell") to submit the form. Hubbard faxed the form to Sorrell, and Sorrell informed Hubbard she received the form and would key in the evaluation for Hubbard. However, Sorrell forgot to submit the form into Walmart's computer system. When Hubbard returned to work, after the deadline, she discovered the evaluation had not been submitted. Hubbard then keyed the form into the computer herself.

After Hubbard missed the deadline, Walmart sought disciplinary action against her. Walmart's disciplinary procedure consists of four steps: (1) Verbal Coaching; (2) Written Coaching; (3) Decision Day Coaching; and (4) Termination. Throughout her employment with Walmart, Hubbard had received Verbal Coaching[1] and Written Coaching.[2] Thus, for missing the evaluation deadline, Walmart issued Hubbard a Decision Day Coaching form on October 6, 2011. The Decision Day Coaching form states:

> Trudy had a[n] evaluation go late and show up on the recap. Laquita Kemp's evaluation was not covered in the time allotted. This is a violation of company policy. Associate evaluation has to be keyed in the time it should. Having a late evaluation is a violation of company policy.

(ECF No. 14-2). Dissatisfied with the Decision Day Coaching, Hubbard disputed the disciplinary action with the store manager, Keith Miller ("Miller"). Hubbard explained to Miller

---

[1]Hubbard received verbal coaching when she worked at the Monticello Walmart store. (ECF No. 20). Hubbard states that she disagreed with the verbal coaching. *Id.*
[2]Hubbard received written coaching also at the Monticello Walmart store. (ECF No. 20). Again, Hubbard disagreed with the written coaching. (ECF No. 19-3).

2

that she completed the evaluation over the phone prior to the deadline but Sorrell forgot to submit it. Miller told Hubbard that Walmart did not tolerate an evaluation conducted over the phone and the Decision Day Coaching would remain on her record. Hubbard then contacted the Market Resources Manager, Maurice Cabble ("Cabble"), to complain about the coaching. Cabble did not remove the Decision Day Coaching from Hubbard's record.

Still dissatisfied with the Decision Day Coaching, on February 6, 2012, Hubbard filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her EEOC charge, Hubbard claimed Walmart issued the Decision Day Coaching because of her race and sex in violation of Title VII of the Civil Rights Act of 1964. Specifically, on the EEOC charge form, Hubbard placed an "X" in the boxes next to race and sex discrimination. (ECF No. 14-3). She further reported on the form that she was "aware that a similarly situated [w]hite male manager conducted a telephone evaluation and was not disciplined like [her]." (ECF No. 14-3). Hubbard later confirmed in her deposition that the white male she referenced in her charge is assistant store manager, Marc Harris ("Harris"). Harris asked Tyler Lacey ("Lacey"), an hourly employee, to conduct an evaluation over the phone on behalf of Harris. Lacey conducted the evaluation over the phone for Harris and then asked the store manager, Miller, to key the evaluation into the computer. Miller keyed the evaluation into the computer prior to the deadline on behalf of Harris and Lacey.

After Hubbard filed the EEOC charge, but before the EEOC reviewed her claims, Walmart issued Hubbard another disciplinary action[3] on November 7, 2011, and then terminated Hubbard's employment on February 17, 2012. Subsequently, on September 14, 2012, the EEOC dismissed Hubbard's claim against Walmart and issued her a Notice of Suit Rights.

---

[3]The disciplinary action was the issuance of a Performance Improvement Plan (PIP). The PIP states that Hubbard received the reprimand for the "inability to perform job duties." (ECF No. 19-8). The PIP provided Hubbard the opportunity to improve her performance. *Id.*

Hubbard then initiated this *pro se* action on December 11, 2012.  In her Complaint, Hubbard alleges that Walmart discriminated against her based on her race and sex.[4]  Specifically, Hubbard claims that Walmart issued the Decision Day Coaching based on her race and sex.  Hubbard reiterated her comparison to Harris from her EEOC charge in her Complaint.  Additionally, in her Complaint, Hubbard alleges that Walmart discriminated against her by terminating her employment.  Walmart then filed the instant Motion for Summary Judgment.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

---

[4]Hubbard used a *pro se* form to file her Complaint.  On the form, Hubbard checked a box indicating that she brought this suit pursuant to the Age Discrimination in Employment Act.  (ECF No. 1).  However, in her Response to Defendant's Motion for Summary Judgment, Hubbard informs the Court that she is not pursuing a claim for age discrimination.  (ECF No. 20).

4

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

DISCUSSION

Hubbard asserts two Title VII claims against Walmart: (1) discrimination based on race and sex for the Decision Day Coaching decision pursuant to 42 U.S.C. § 2000e-2(a); and (2) retaliation for filing an EEOC charge pursuant to 42 U.S.C. § 2000e-3(a). The Court will first address Hubbard's discrimination claim. Then, the Court will discuss Hubbard's retaliation claim.

1. Discrimination Claim

To establish a *prima facie* case of race or sex discrimination, plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting the employer's legitimate job expectations; and (4) a similarly situated employee outside the protected class was treated differently. *Tolen v. Ashcroft*, 377 F.3d 878, 882 (8th Cir. 2004). A failure to establish just one element of a *prima facie* case defeats a Title VII discrimination claim. *Tatum v. City of Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2005).

If the plaintiff can establish a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Takele v. Mayo*

*Clinic*, 576 F.3d 834, 838 (8th Cir. 2009). If the defendant makes such a showing, the plaintiff must demonstrate by a preponderance of the evidence that the stated non-discriminatory rationale was a mere pretext for discrimination. *Id.*

In this case, Walmart argues that Hubbard fails to establish a *prima facie* case for discrimination based on race and sex for the Decision Day Coaching. Specifically, Walmart argues that Hubbard cannot: (A) demonstrate she suffered an adverse employment action; (B) establish she was meeting Walmart's legitimate job expectations; and (C) identify a similarly situated employee who received a more favorable treatment under the same circumstances. The Court will now discuss each of these elements separately.

### A. Adverse Employment Action

The Court first agrees with Walmart that Hubbard has failed to demonstrate that she suffered an adverse employment action for the Decision Day Coaching. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Wilkie v. Dep't of Health and Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011). "A reprimand is an adverse employment action only when the employer uses it as a basis for changing the terms or conditions of the employee's job for the worse." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1058 (8th Cir. 2007).

In this case, the Court concludes that Hubbard has failed to establish that the Decision Day Coaching adversely affected her employment with Walmart. Hubbard offers no evidence that the terms and conditions of her employment changed after she received the coaching. Hubbard continued to work as an Assistant Store Manager at the El Dorado store and received

the same salary that she received prior to the Decision Day Coaching. Hubbard argues that the Decision Day Coaching put her in jeopardy of termination. Specifically, after Walmart issued her the Decision Day Coaching, she received another disciplinary action and then Walmart terminated her employment. Thus, Hubbard argues, if she had not received the Decision Day Coaching, she would have not have been on the last stage of the disciplinary procedure and she would not have been terminated. The Court finds Hubbard's argument unpersuasive. Hubbard's Complaint alleges that Walmart discriminated against her based on race and sex when it issued her a Decision Day Coaching form. Thus, the issue in this case is whether the Decision Day Coaching resulted in an adverse employment action, not whether a subsequent disciplinary action resulted in an adverse action. Accordingly, because the Decision Day Coaching did not change the terms and conditions of her employment, Hubbard has failed to establish an adverse employment action.[5]

### B. Legitimate Job Expectations

Even if the Decision Day Coaching was an adverse employment action, Hubbard has failed to establish that she was meeting Walmart's legitimate job expectations. Hubbard admitted in depositions that it was her responsibility as an assistant store manager to key associates' evaluations into the computer prior to the deadline and she did not submit Kemp's evaluation by that deadline. She further does not contest that Walmart's implementation of the deadline is a legitimate job expectation. Accordingly, Hubbard has failed to establish that she was meeting Walmart's legitimate job expectations.

---

[5]The Court notes that the Seventh Circuit has held that progressive discipline, ending in termination, is not an adverse employment action. *See Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) ("With the benefit of hindsight, it can be said that . . . each oral or written reprimand brought [the plaintiff] closer to termination. Such a course was not an inevitable consequence of every reprimand however; job-related criticism can prompt an employee to improve her performance and thus lead to a new and more constructive employment relationship.").

### C. Similarly Situated Employee

Finally, the Court also concludes that Hubbard has failed to identify a similarly situated employee who received a more favorable treatment under the same circumstances. A similarly situated employee "must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007).

In this case, Hubbard argues that Harris is a similarly situated employee who received a more favorable treatment under the same circumstances. Specifically, Hubbard argues that Harris is similarly situated because, like Hubbard, he is an assistant store manager who conducted an associate's evaluation over the phone. Hubbard asserts that Harris received more favorable treatment because Walmart did not issue him a Decision Day Coaching after he conducted the phone evaluation. The Court disagrees. Even though both Harris and Hubbard conducted phone evaluations, Harris's evaluation was submitted by the deadline where as Hubbard failed to meet the deadline. Thus, Harris and Hubbard did not engaged in the same conduct and are not similarly situated.

Accordingly, for the foregoing reasons, Hubbard has failed to establish her Title VII *prima facie* case. Therefore, Hubbard's discrimination claim must be dismissed.

2. Retaliation Claim

Hubbard additionally alleges a retaliation claim against Walmart. Specifically, Hubbard asserts that Walmart issued her a PIP and terminated her employment in retaliation for her filing an EEOC charge of discrimination. Walmart argues that Hubbard cannot pursue the retaliation claim. Specifically, Walmart argues that because Hubbard did not file an EEOC charge for the

retaliation claim, she failed to exhaust administrative remedies and Title VII bars her from bringing the claim.

The Court agrees with Walmart. Title VII requires a complainant to file a charge with the EEOC within 180 days "after *the* alleged unlawful employment practice occurred," and give notice to the employer of the circumstances of "*the* alleged unlawful employment practice." *Richter v. Advance Auto Parts*, 686 F.3d 847, 851 (8th Cir. 2012) (quoting 42 U.S.C. § 2000e-5(e)(1)). The use of the definite article in the statute shows that the complainant must file a charge with respect to each alleged unlawful employment practice. *Id.*

For example, in *Richter*, the plaintiff filed an EEOC charge on August 18, 2009, alleging that she suffered an adverse employment action because of her race and sex. *Id.* Subsequently, on August 25, 2009, plaintiff's employer terminated her employment. *Id.* Following her termination, Plaintiff filed suit in federal court alleging a retaliation claim for the August 25, 2009 termination. *Id.* The defendant asserted that the retaliation claim was barred because the plaintiff did not file an EEOC charge for that claim. *Id.* The plaintiff argued that she did not need to file a charge for the retaliation claim because the claim was "like or reasonably related to" her discrimination claim based on race and sex that she presented to the EEOC on August 18, 2009. *Id.* The Eighth Circuit disagreed. *Id.* The Eighth Circuit reasoned that the discrimination claim and retaliation claim are "two discrete acts of alleged discrimination—one in violation of 42 U.S.C. § 2000e-2(a), one in violation of § 2000e-3(a)." *Id.* The Eighth Circuit stated that "each discrete act is a different unlawful employment practice for which a separate charge is required." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061 (2002)). Thus, the Eighth Circuit concluded, because the plaintiff failed to file an EEOC charge for the retaliation claim, the claim was properly dismissed. *Id.*

In this case, like in *Richter*, Hubbard failed to exhaust remedies for the retaliation claim. The parties do not dispute that Hubbard's EEOC charge does not contemplate a retaliation claim. Hubbard instead argues that the EEOC charge encompasses the retaliation claim because she "listed on her charge that the discrimination was continuing." The Court finds this argument unpersuasive. As the Eighth Circuit stated in *Richter*, the discrimination charge and the retaliation claim are different unlawful employment practices for which a separate charge is required. Thus, because Hubbard did not file an EEOC charge for the retaliation claim, she failed to exhaust her administration remedies with respect to that claim. Accordingly, Hubbard's retaliation claim must be dismissed.[6]

## CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 14) should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**. An order of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 3rd day of April, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[6] In Hubbard's Response to Walmart's Motion for Summary Judgment, Hubbard appears to assert new claims for discrimination and retaliation pursuant to 42 U.S.C. § 1981. Although *pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, a district court may not "'rewrite a petition to include claims that were never presented.'" *Palmer v. Clarke*, 408 F.3d 423, 444 n.15 (8th Cir. 2005) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). Hubbard did not plead the § 1981 claims in her Complaint. Thus, the Court cannot consider these claims.